**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SYLVIA ZANA KATZENMAIER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| *v.* | § | **Civil Action No. 3:14-CV-3216-P-BK** |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, the undersigned now considers the parties' cross-motions for summary judgment.  For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 13, be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 15, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

### I.  BACKGROUND[1]

#### A.  Procedural History

Plaintiff seeks judicial review of a final decision by Defendant denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").  Plaintiff filed for DIB and SSI in October 2011, claiming that she became disabled in June 2008.  Doc. 8-6 at 9-10.  Plaintiff's application was denied at all administrative levels.  Doc. 8-3 at 2-5, 17-19; Doc. 8-5 at 3-6, 8-13.  Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g).

#### B.  Factual Background

At the time of her alleged onset of disability, Plaintiff was 44 years old.  Doc. 8-3 at 37.

---

[1]  The following background comes from the transcript of the administrative proceedings, Doc. 8, which is split among nine documents, Doc. 8-1 to 8-9.

She has a high school diploma and was previously employed as a photographer, and more recently in accounting.  Doc. 8-3 at 37, 39.  Plaintiff generally suffers from arthritis and degenerative disc disease in both her cervical spine and lumbar spine.  Plaintiff's injuries stem from a motor vehicle accident on March 8, 2000.  Doc. 8-8 at 36.

The record contains medical source statements from multiple examining physicians.  In January 2011, Dr. Lawrence Ahn observed tenderness at C5 to C7, tight myofascial bands, and a 20 to 30 degree range of motion for Plaintiff's cervical spine.  Doc. 8-8 at 37.  As to the lumbar spine, Dr. Ahn noted tenderness to palpation at the lumbosacral junction and a 15 to 40 degree range of motion.  Doc. 8-8 at 37.  Dr. Ahn diagnosed Plaintiff with chronic neck and lower back pain and ordered an x-ray, which showed normal alignment of the lumbar spine, normal lordosis, and fairly well maintained disc heights throughout the lumbar spine.  Doc. 8-8 at 38.

In July 2011, Plaintiff underwent an MRI.  Doc. 8-8 at 99.  As to Plaintiff's cervical spine, Dr. Richard Ozmun observed multilevel degenerative change, most notably at C5/C6, as well as notable disc desiccation at all levels, minimal disc narrowing at C4/C5, and moderate disc narrowing at C5/C6.  Doc. 8-8 at 99.  Dr. Ozmun also found a 3-millimeter broad-based central bulge at C4/C5 with no facet arthropathy and no significant foraminal narrowing, and a 4-millimeter bilateral paracentral uncovertebral spurring and bulge at C5/C6 with moderate bilateral foraminal narrowing.  Doc. 8-8 at 99-100.  As to Plaintiff's lumbar spine, Dr. Ozmun observed mild disc desiccation, a 1-millimeter broad-based bulge at L4/L5, and a 3-millimeter broad-based central and paracentral bulge at L5/S1.  Doc. 8-8 at 101-02.

In February 2012, Plaintiff presented to Greenville Community Health complaining of tingling in her extremities.  Doc. 8-9 at 3.  Kamala Fields, registered nurse-first assistant, completed an ability-to-work questionnaire, opining that Plaintiff could only sit or stand for one

hour each in an eight-hour workday due to "weakness," and would frequently need the flexibility to change positions.  Doc. 8-9 at 27.

### C.  The Administrative Hearing

In June 2013, a hearing was held before the ALJ.  Doc. 8-3 at 34-70.  Dr. Kweli Amusa appeared as a medical expert and testified in relevant part:

> I think it's reasonable that she is at a reduced, light level, where she would lift 20 occasionally, 10 frequently.  She would stand or walk two hours in a [sic] eight-hour day, sit for six.  She may have to periodically alternate sitting and standing for comfort.  And she would never climb ladders, ropes or scaffolds.  All other posturals may be performed occasionally.  I would limit reaching overhead to frequently.

Doc. 8-3 at 57.  Vocational expert ("VE") Jerry Hildre also appeared and, in response to a hypothetical question tracking Dr. Amusa's testimony, stated that someone of such ability would be able to perform Plaintiff's past relevant work in accounting.  Doc. 8-3 at 61-62.  On cross-examination, Plaintiff's counsel asked the VE to modify the hypothetical to reflect a need for alternating between sitting and standing "at will."  Doc. 8-3 at 62.  The VE testified that this modification would preclude work.  Doc. 8-3 at 62.

After this statement, the following colloquy ensued:

ALJ:   My hypothetical was alternating sitting and standing.
VE:    Yes, Judge.
ALJ:   And [counsel's] was alternating at will.
VE:    Yes, Judge.
ALJ:   Exactly, what's the difference?
VE:    When you alternate sitting and standing and you have it at the claimant's will --
ALJ:   Yeah?
VE:    -- you don't know if it's going to be changing a position once for one minute, not at all, or constantly.  So it's too unpredictable.  It's just too unpredictable.  So if you frame it in terms of time --
ALJ:   Yeah, but --
VE:    -- or frequency --
ALJ:   -- our medical expert didn't.  She just said alternating --
VE:    Yes, Judge.

3

                . . .
        ALJ:    -- sitting and standing.
        VE:     Yes, Judge.

Doc. 8-3 at 64-65.  Plaintiff's counsel then questioned the VE again: "In your experience, do you

see typical workers in a workplace that are switching between sitting and standing at precise,

exact amounts of time, like every 30 minutes or every 15 minutes?"  Doc. 8-3 at 65.  The VE

responded "no."  Doc. 8-3 at 65.

        **D.  The ALJ's Findings**

        In June 2013, the ALJ issued a decision unfavorable to Plaintiff.  Doc. 8-3 at 17-19.  At

step one, he found that Plaintiff had not engaged in substantial gainful activity since June 8,

2008.  Doc. 8-3 at 22.  At step two, the ALJ found that Plaintiff had the following severe

impairments: lumbar and cervical disc disease and arthritis.  Doc. 8-3 at 22.  At step three, the

ALJ found that Plaintiff did not have an impairment that met or medically equaled the

presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1.  Doc. 8-3 at 23.

The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform

light work with the following limitations: she needs periodic alternating between standing/sitting

every two hours; she cannot climb ladders, ropes, or scaffolds, but can do other postural

activities occasionally; she can reach overhead frequently; and she has to avoid concentrated

exposure to cold, vibration, and uneven terrain.  Doc. 8-3 at 26.

        In so finding, the ALJ considered Dr. Amusa's testimony and gave "significant

evidentiary weight" to her opinions regarding the impairments and the limitations they would

reasonably produce.  Doc. 8-3 at 25.  Specifically, the ALJ characterized Dr. Amusa's testimony

in relevant part as follows:

        She opined that [Plaintiff] could sit 6 hours in an 8 hour workday at 2 hour intervals,
        stand 6 hours in an 8 hour workday at 2 hour intervals, and walk 6 hours in an 8

hour workday at 2 hour intervals, lift 10 pounds frequently and 20 pounds occasionally; she needs periodic alternating between standing/sitting every 2 hours.

Doc. 8-3 at 25. The ALJ also considered Nurse Fields' opinion that Plaintiff was too weak to do even sedentary work activities on a sustained basis, but gave it no evidentiary weight. Doc. 8-3 at 25. The ALJ noted that Fields' opinion essentially relies on Plaintiff's allegations and offers no objective findings for support. Doc. 8-3 at 25. The ALJ concluded that Fields' statement was "inconsistent with objective clinical signs and diagnostic findings, [and] inconsistent with the history of medical treatment." Doc. 8-3 at 25. At step four, the ALJ found that Plaintiff is able to perform her past relevant work in accounts receivable. Doc. 8-3 at 27.

## II.  LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful

activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

      Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point

during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant

satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step

five to show that there is other gainful employment available in the national economy that the

claimant can perform.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by

reference to the Medical-Vocational Guidelines of the regulations or by expert vocational

testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

      Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence because it conflicts with Dr. Amusa's expert testimony, which the ALJ gave significant

weight.  Doc. 14 at 6.  Specifically, Plaintiff posits that the ALJ impermissibly substituted his

judgment for that of Dr. Amusa -- who testified only that Plaintiff "may need to periodically"

alternate between sitting and standing -- by specifically including in the RFC that Plaintiff must

alternate between sitting and standing every two hours.  Doc. 14 at 7-8.  Plaintiff contends that

*Hanna v. Astrue*, 395 F. App'x 634 (11th Cir. 2010) (per curiam), is analogous.  In that case, the VE interpreted a medical expert's testimony to mean that the claimant was limited only as to fine manipulation, but the VE also testified in a separate hypothetical that the claimant could not return to his past relevant work if he were limited to occasional fingering, handling, and gross and fine manipulation.  Doc. 14 at 7.  Here, Plaintiff contends, the ALJ did not explain the inconsistency between Dr. Amusa's statement, which did not specifically state how often Plaintiff must alternate between sitting and standing, and his RFC determination.  Doc. 14 at 8.  Thus, Plaintiff contends, the record lacks support for the ALJ's conclusion that Plaintiff would be required to change positions every two hours.  Doc. 14 at 8.  Plaintiff argues that the ALJ essentially picked and chose only the evidence that supported his decision.  Doc. 14 at 9.  Plaintiff insists that, even assuming the ALJ correctly interpreted Dr. Amusa's testimony, other evidence suggests Plaintiff needs to alternate sitting and standing at will: (1) Dr. Amusa's statement that Plaintiff may need to alternate sitting and standing "for comfort," which the VE specifically stated would preclude Plaintiff from her past relevant work; and (2) Fields' opinion that Plaintiff frequently requires the flexibility to alternate positions because of her impairments. Doc. 14 at 10.

Defendant first responds that the ALJ's RFC finding need not mirror a medical source's opinion and, even if Plaintiff is correct, the inconsistency between the ALJ's RFC finding and Dr. Amusa's opinion was harmless because the VE's testimony was based on Dr. Amusa's actual testimony regarding Plaintiff's limitations.  Doc. 15-1 at 4.  Defendant argues that regardless, this case is inapposite of *Hanna* because Dr. Amusa's testimony was unambiguous and, thus, further clarification of the terms "periodically" and "for comfort" was not necessary.  Doc. 15-1 at 5.  Defendant notes that the subsequent colloquy among the ALJ, Plaintiff's counsel, and the

VE indicates that the VE understood a distinction between "periodically" alternating between sitting and standing and doing so "at will." Doc. 15-1 at 5-6. Defendant also contends that what Plaintiff characterizes as the ALJ's substitution of his own judgment was, instead, a proper interpretation of the medical evidence in order to determine Plaintiff's capacity to work, as the ALJ reasoned through the various medical opinions in the record and explained why he accorded respective weight to each of them. Doc. 15-1 at 8-9.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is able to do despite his physical and mental limitations, and the RFC is considered by the ALJ, along with the claimant's age, education and work experience in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923.

In this case, the ALJ's RFC is supported by substantial evidence. While the RFC must include a resolution of any inconsistencies in the evidence, *Myers*, 238 F.3d at 620, no such inconsistency exists here. Webster defines "periodically" as "at regular intervals of time." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1680. Based on the foregoing, the ALJ's interpretation of Dr. Amusa's "periodically" as "every 2 hours" is reasonable and consistent with the term's plain meaning -- "at regular intervals of time." *Cf. Westover v. Astrue*, 2012 WL 6553102 at *4 (N.D. Tex. Nov. 16, 2012) (Cureton, J.) (citing SSR 86-8, 1986 WL 68636 at *8) ("The ALJ is permitted to draw reasonable inferences from the evidence in making his decision."). Plaintiff offers no authority to the contrary.

Plaintiff's reliance on *Hanna* is misplaced.  In *Hanna*, the expert did not specify how often the claimant could perform hand and finger movements, gross manipulation, and fine manipulation, which led the VE to answer multiple hypothetical questions differently as to the claimant's ability to work.  395 F. App'x at 636.  Here, the medical expert *did* state how often Plaintiff would need to alternate -- *periodically*.  Doc. 8-3 at 57.  And while the VE did, upon questioning by Plaintiff's counsel, testify that Plaintiff "could not return to [her] past work" if restricted to "at will" alternation between sitting and standing, Doc. 8-3 at 62, the phrase "at will" was not utilized by any medical source.

Again, Dr. Amusa testified only that Plaintiff required periodic position shifting.  It is apropos that the ALJ was permitted to give controlling weight to Dr. Amusa's testimony and resolve any conflicts within that testimony.  And while Dr. Amusa did not state how often Plaintiff might need to alternate "for comfort," the ALJ was aslo entitled to resolve any conflict between Dr. Amusa's  testimony that Plaintiff required the ability to change positions both "periodically" and "for comfort."  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (noting that the ALJ has the sole responsibility for resolving conflicts in the evidence). Moreover, contrary to Plaintiff's suggestion, the ALJ's discussion of the remainder of the medical evidence is detailed and sufficiently supported by substantial evidence.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). Finally, Plaintiff's suggestion that the ALJ's RFC determination is undermined by Nurse Fields' opinion, is also unavailing.  In discounting Nurse Fields' opinion, the ALJ found that it was based solely on Plaintiff's subjective complaints and was "inconsistent with objective clinical signs and diagnostic findings, [and] inconsistent with the history of medical treatment."  Doc. 8-3 at 25.

9

The record supports this conclusion.

Ultimately, this Court is not permitted to substitute its judgment for that of the Commissioner.  On the record before the Court, the Court finds that the ALJ's RFC was supported by substantial evidence.  Accordingly, Defendant is entitled to summary judgment.

### IV.   CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 13, should be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on September 8, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11